## STOTTS *v.* BROOKFIELD.

Decided January 16, 1892.

1. *Chancery sale—Confirmation.*

An unconfirmed chancery sale passes no title.

2. *Judgment—Foreclosure of vendor's lien—Execution.*

Where, in a suit to foreclose a vendor's lien, judgment is rendered for the sum due, in addition to fixing the lien, the judgment becomes a lien on defendant's lands, to enforce which a general execution may issue without an order of court.                .                /

3. *Execution—Sale—Innocent purchaser.*

The title of a purchaser at execution sale, who is not proved to be at fault, cannot be impaired by showing a mere irregularity in the issuance of the execution.

4. *Replevin—Cross-ties—Accession.*

Where one entered upon land in the constructive possession of another, knowing the latter's claim of ownership, and cut therefrom timber which he converted into cross-ties, the conversion is not such a change in the identity of the property that replevin will not lie for its recovery.

APPEAL from *Poinsett* Circuit Court.

J. E. RIDDICK, Judge.

Brookfield sued Stotts in replevin to recover four thousand cross-ties. The land from which they were cut was wild and uncultivated, and had previously belonged to W. L. Hughes. In 1885 Lemuel McGuire obtained a decree against Hughes for the recovery of the sum of $240, which was declared a lien upon the land for its purchase money. Under the decree the commissioner sold the land to McGuire for $84. The sale was never confirmed, and Hughes redeemed the land by paying the amount bid at the sale, together with the penalty and costs. On January 29, 1887, Hughes sold the land to defendant Stotts. On February 22, 1887, Mc-Guire obtained from the clerk an execution for the balance due on his judgment, under which Brookfield purchased the land. Subsequently Stotts went upon the land and cut the cross-ties, knowing at the time that Brookfield claimed the land. There was verdict and judgment for Brookfield. Stotts has appealed.

*J. C. Hawthorne* for appellant.

1. McGuire, by accepting the redemption money, was estopped to dispute the validity of the redemption or title of appellant, acquired by purchase from McGuire. 8 N. W. Rep., 305.

2. The sale of the land under the judgment extinguished the lien, and the redemption purchaser acquired title against one purchasing at an execution sale issuing on the same judgment, subsequent to the redemption. 4 Cow., 133; 8 Johns., 333. Where real estate is sold for a part of the judgment, the effect of the sale is to divest the lien of the judgment for the balance. 50 Iowa, 590; 6 N. Y., 274.

3. Appellant believed himself the owner of the land, and the rule is, that he would only be liable for the actual value of the timber cut, and not of the cross-ties. 17 Wis., 550; 22 Mich., 211; 41 Pa. St., 291; 32 Ohio St., 571.

*Sanders & Watkins* for appellee.

1. The execution and delivery of the sheriff's deed took effect by relation back to the date of sale. 5 Cow., 80; 31 Cal., 304; 22 Wend., 125; 15 Johns., 309; 2 Wend., 509; 79 Ill., 467; 28 Mich., 296. Thus giving a cause of action to the execution purchaser for any injury done pending the time of redemption.

2. A sale under a judgment does not displace the lien, unless the purchaser is a third party, the sale perfected and no time given for redemption.

3. The sale by the master never having been confirmed, the title remained in Hughes subject to the judgment lien.

4. If the title passed to McGuire under his purchase at the sale, he having caused the issuance of the execution and sold as the property of Hughes, and received the benefits of such sale, whatever of claim he had passed to the execution purchaser as an estate by estoppel. By redeeming the land, the lien was at once restored. 31 Ark., 252.

5. Stotts testified that "he knew plaintiff claimed the land at the time he went upon it to cut ties." He was, there-

fore, a wilful trespasser within the rule in 106 U. S., 32 and 44 Ark., 210.

COCKRILL, C. J.   The appellant assigns two errors for the reversal of the judgment and suggests no other question :

First—That the plaintiff has shown no title to the land from which the cross-ties in suit were cut.

Second—That in no event should the recovery be for anything except the stump value of the timber.

First as to the title:   The decree in the case of *McGuire v. Hughes,* which was put in evidence, awards to the plaintiff a specific sum of money to be recovered of the defendant, declares the amount a lien on the land in dispute, and directs that it be sold by a commissioner to pay off the charge adjudged against it.   The commissioner sold the land to McGuire, in accordance with the order, in part satisfaction of the decree, but the sale was never confirmed.   The title to the land remained therefore in Hughes.   *Apel* v. *Kelsey,* 47 Ark., 413.   Being the property of the judgment defendant, it was bound by the general lien of the judgment from the date of its rendition.

1. Chancery sale must be confirmed.

When a judgment *in personam* in a foreclosure suit is for the deficiency only that may exist after the sale of the condemned property, the rule seems to be that it carries no general lien until after a deficiency is ascertained.   *Bell* v. *Gilmore,* 25 N. J. Eq., 104.   But the judgment against Hughes is for a definite sum and contains all the necessary elements of a judgment at law for the recovery of money.   The statute therefore makes it a lien on the lands of the defendant.   *Price* v. *State Bank,* 14 Ark., 53.   A general execution may issue on such a judgment without an order of court.

2. Execution may issue on judgment foreclosing vendor's lien.

Whether the plaintiff may be required to exhaust the specific remedy given by the decree before resorting to a general execution, is a question that can be raised only by the defendant in the execution before the sale, or, at farthest, before the deed is executed.   The principle to be deduced from the authorities, to which this court has steadily ad-

3. Execution sale not void for irregularity when.

hered, is that the title of a purchaser at execution sale, who is not proved to be at fault, cannot be impaired by showing a mere irregularity in the issuance of the process. *Adamson* v. *Cummins,* 10 Ark., 554; *Meredith* v. *Scallion,* 51 *id.,* 361; *Carden* v. *Lane,* 48 *id.,* 216.

The appellee in this case purchased the land at a sale under a general execution issued upon the judgment above mentioned, and it is not shown that he was apprised of any irregularity. As the lien upon the judgment had not expired when the sale was made, the title of the appellee, who was the purchaser, was superior to that of the appellant who held by conveyance from the execution defendant, made after the rendition of the judgment. It follows that the plaintiff was the owner of the land and therefore of the trees cut from it. *Brock* v. *Smith,* 14 Ark., 431; *Stewart* v. *Scott,* 54 Ark., 187.

The facts in reference to the title were undisputed. It was the province of the court to draw the legal deduction frem the undisputed facts, and it would not have prejudiced the appellant if the jury had been charged that the title was in the appellee.

**4. Owner may replevy trees converted into cross-ties.** Second. The appellant conceded the appellee's right to recover judgment, if his title to the land is established; but he insists that it shall not be for the return or value of the property in its enhanced state. The question is raised only by the court's charge as set out below and by its refusal to give the converse thereof, viz.: " If the jury find from the evidence that plaintiff was the owner of certain wild and unoccupied lands, and that the defendant, knowing that plaintiff claimed to be the owner of said lands, without right and without authority or consent of plaintiff entered upon said land and cut therefrom timber and made the same into the ties in question in this suit, they will find for the plaintiff, and assess the value of the ties at their fair market value. * * * The defendant cannot in this suit recover anything for the work and labor performed by him on said ties,

even if said labor was performed in good faith under the belief that he had title to said land."

While it is difficult to draw from the authorities a rule by which we may determine with certainty what change in the original property converted will destroy its identity so that replevin will not lie for its recovery, it is settled that the conversion of timber into cross-ties is not such a change, whether the change has been wrought by a wilful or an innocent wrongdoer. *McKinnis* v. *Railway*, 44 Ark., 210.

It may be that one who is in the quiet possession of land, claiming it against the true owner under the honest belief that it is his own, cannot be subjected to a trial of his title in an action of replevin for, timber cut upon the land. *Beatty* v. *Brown*, 76 Ala., 267. But that is not the theory upon which the appellant has presented his case, either in his abstract of the facts or in his argument. The charge of the court goes upon the hypothesis that the appellant entered upon the constructive possession of the appellee, who was the owner, and cut the ties knowing the appellee's claim of ownership. The appellant has not suggested that the evidence does not support that hypothesis, or that there is any evidence to contradict it. The established practice does not require us to search the record to ascertain if the court has committed an error of which the appellant makes no complaint. In such case the presumption is that no error exists. Taking the hypothesis upon which the charge is based as the true state of facts, the conclusion coincides with the judgment in *McKinnis* v. *Railway*, 44 Ark., *sup.*

The judgment must be affirmed.